No. 15-90032

IN THE

# United States Court of Appeals for the Eleventh Circuit

TERRENCE P. COLLINGSWORTH, ET AL.

*Petitioners,*

v.

DRUMMOND COMPANY, INC.

*Respondent.*

On Certified Order from the
United States District Court
for the Northern District of Alabama

---

**RESPONDENT DRUMMOND COMPANY, INC.'S OPPOSITION TO TERRENCE P. COLLINGSWORTH'S PETITION FOR PERMISSION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

---

William A. Davis III
H. Thomas Wells III
Benjamin T. Presley
STARNES DAVIS FLORIE LLP
100 Brookwood Place, Floor 7
Birmingham, AL  35259
(205) 868-6000
*Counsel for Drummond Company, Inc.*

{B2116262}

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, Respondent certifies that, to the best of counsel's knowledge, the following persons have an interest in the outcome of this case:

Badham & Buck, LLC (counsel for Petitioner Terrence P. Collingsworth)

Badham, III, Walker Percy (counsel for Petitioner Terrence P. Collingsworth)

Bonner, Eric D. (counsel for Petitioners Terrence P. Collingsworth and Conrad & Scherer, LLP)

Brown, T. Michael (Special Master, Northern District of Alabama)

Clark, Jr., John W. (counsel for Petitioners Terrence P. Collingsworth and Conrad & Scherer, LLP)

Clark, Hair & Smith, P.C. (counsel for Petitioners Terrence P. Collingsworth and Conrad & Scherer, LLP)

Collingsworth, Terrence P. (Petitioner)

Conrad & Scherer, LLP (Petitioner)

Davis, III, William A. (counsel for Respondent Drummond Company, Inc.)

Drummond Company, Inc. (Respondent)

Ialacci, Brett A. (counsel for Petitioner Terrence P. Collingsworth)

Kropf, Sara E. (counsel for Respondent Drummond Company, Inc.)

Law Office of Sara Kropf PLLC (counsel for Respondent Drummond Company, Inc.)

Miller, Carlyn E. (Assistant to Special Master Michael Brown, Northern District of Alabama)

Paulk, William T. (counsel for Petitioner Conrad & Scherer, LLP)

Presley, Benjamin T. (counsel for Respondent Drummond Company, Inc.)

Proctor, Judge R. David (U.S. District Judge, Northern District of Alabama)

Putnam, Judge T. Michael (U.S. Magistrate Judge, Northern District of Alabama)

Sansbury, Jr., William R. (counsel for Petitioner Conrad & Scherer, LLP)

Scherer, Jr., William R.

Smith, Bradley J. (counsel for Petitioners Terrence P. Collingsworth and Conrad & Scherer, LLP)

Spotswood, Robert K. (counsel for Petitioner Conrad & Scherer, LLP)

Spotswood Sansom & Sansbury, LLC (counsel for Petitioner Conrad & Scherer, LLP)

Starnes Davis Florie LLP (counsel for Respondent Drummond Company, Inc.)

Wells, III, H. Thomas (counsel for Respondent Drummond Company, Inc.)

Pursuant to Federal Rule of Appellate Procedure 26.1, Respondent certifies that Drummond Company, Inc. has no parent company and no publicly held corporation owns 10% or more of its stock.

_s/ H. Thomas Wells, III_
H. Thomas Wells, III
Starnes Davis Florie, LLP
100 Brookwood Place, Seventh Floor
Birmingham, AL 35209
(205) 868-6000

_Counsel for the Respondent_
_Drummond Company, Inc._

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..............................................................................C-1

TABLE OF CONTENTS.............................................................................i

TABLE OF AUTHORITIES........................................................... ii

ARGUMENT AND CITATIONS TO AUTHORITY .........................................1

    I.     PETITIONERS' FIRST PURPORTED "CONTROLLING QUESTION OF LAW" IS NOT THE PROPER SUBJECT OF A § 1292(b) INTERLOCUTORY APPEAL. ................................................................3

        A.     Whether there was a *prima facie* case of fraud on the court, witness bribery and suborning perjury is not a "controlling question of pure law."................................................3

        B.     There are no "substantial grounds for difference of opinion."......................................................................7

    II.    THE DISTRICT COURT CORRECTLY SET FORTH THIS COURT'S FORMULATION OF THE SECOND PRONG OF THE CRIME-FRAUD EXCEPTION.........................................................................16

    III.   RESOLUTION OF THE PETITIONERS' PURPORTED "QUESTIONS OF LAW" WILL NOT SUBSTANTIALLY REDUCE THE AMOUNT OF LITIGATION NECESSARY ON REMAND. ...........................................19

CONCLUSION.........................................................................20

CERTIFICATE OF SERVICE.........................................................21

# <u>TABLE OF AUTHORITIES</u>

**Case**                                                                                                    **Page(s)**

*1100 West, LLC v. Red Spot Paint and Varnish Co., Inc.*,
    No. 1:05-cv-1670-LJM-JMS, 2009 WL 232060 (S.D. Ind. Jan. 30, 2009) ..10

*Baloco, et al. v. Drummond Co., Inc., et al.*,
    767 F.3d 1229 (11th Cir. 2014), *cert. denied* 136 S.Ct. 410 (2015) .............12

*Blanchard v. EdgeMark Fin. Corp.*,
    192 F.R.D. 233 (N.D. Ill. 2000) ..................................................................10

*Bryant v. United States*,
    768 F.3d 1378 (11th Cir. 2014) *cert. denied,* 136 S. Ct. 71 (2015) ...............6

*Carpenter v. Mohawk Indus., Inc.*,
    541 F.3d 1048 (11th Cir. 2008) *aff'd*, 558 U.S. 100 (2009)...........................7

*Cox v. Adm'r U.S. Steel & Carnegie*,
    17 F.3d 1386 (11th Cir. 1994) .....................................................................15

*Cramer v. United States*,
    325 U.S. 1 (1945)..........................................................................................15

*Doe, et al. v. Drummond Co., Inc., et al.*,
    782 F.3d 576 (11th Cir. 2015) ...............................................................11, 12

*Gutter v. E.I. DuPont De Nemours*,
    124 F. Supp. 2d 1291 (S.D. Fla. 2000)...................................................10, 17

*In re Grand Jury (G.J. No. 87-03-A)*,
    845 F.2d 896 (11th Cir. 1988) .................................................................6, 17

*In re Grand Jury Investigation (Schroeder)*,
    842 F.2d 1223 (11th Cir. 1987) ......................................................2, 6, 17, 18

*In re Grand Jury Subpoena*,
    419 F.3d 329 (5th Cir. 2005) .......................................................................19

ii

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982)........................................................................9

*In re Sealed Case*,
    754 F.2d 395 (D.C. Cir. 1985)..........................................................9, 10, 11

*Jones v. Tauber & Balser, P.C.*,
    503 B.R. 162 (N.D. Ga. 2013)....................................................................17

*Knight v. E.F. Hutton & Co.*,
    750 F. Supp. 1109 (M.D. Fla. 1990) ............................................................9

*McAbee v. City of Fort Payne*,
    318 F.3d 1248 (11th Cir. 2003) ....................................................................5

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) ........................................................ *passim*

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)...................................................................................5, 6

*Moody v. I.R.S.*,
    654 F.2d 795 (D.C. Cir. 1981)....................................................................10

*Simpson v. Carolina Builders Corp.*,
    222 F. App'x 924 (11th Cir. 2007)..............................................................16

*United States v. Cleckler*,
    265 F. App'x 850 (11th Cir. 2008)..........................................................6, 17

*Wachtel v. Guardian Life Ins.*,
    CIV 01-4183 FSH, 2007 WL 1752036 (D.N.J. June 18, 2007)....................10

**Statute or Rule**                                                             **Page(s)**

28 U.S.C. § 1292(b) ......................................................................... *passim*

**Other Authorities**                                                          **Page(s)**

Wright & Miller, Fed. Prac. and Proc. § 2026 (Supp. 1994)................................3, 20

On December 7, 2015, United States District Court Judge R. David Proctor entered a 50 page memorandum opinion and order (the "District Court's Order") which held, *inter alia*, that the crime-fraud exception applied to certain categories of information and documents withheld on claims of privilege by Defendant-Petitioners Terrence P. Collingsworth and Conrad & Scherer, LLP.   Doc. 417. Before entering its Order, the District Court reviewed over 100 of pages of briefing and exhibits from the parties on the crime-fraud exception.  The District Court also held a three-day evidentiary hearing during which it considered more than 700 evidentiary exhibits, as well as live testimony from several witnesses.

Petitioners[1] now ask this Court for permission to appeal the District Court's Order, contending that the District Court "applied the erroneous legal standard for the crime-fraud exception."   Collingsworth Pet. at 1.[2]  Their petition should be denied for multiple reasons.

*First*, the bulk of Petitioners' arguments are exactly what this Court has consistently held to be the "antithesis of a proper § 1292(b) appeal."  *McFarlin v.*

---

[1]  Conrad & Scherer, LLP joined in the arguments raised by Terrence P. Collingsworth.   *See* Conrad & Scherer, LLP's Petition for Permission for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) at 20 (Appeal No. 15-90031).   Drummond Company, Inc. ("Drummond") therefore refers to Collingsworth and Conrad & Scherer jointly as "Petitioners."

[2]  "Collingsworth Pet." refers to the Petition for Permission for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) filed on December 17, 2015, by Defendant-Petitioner Terrence P. Collingsworth.

*Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). Their first purported "controlling question of pure law" is, in substance, simply a contention that there was insufficient evidence to trigger the crime-fraud exception. That argument – in addition to lacking merit – is not the proper subject of a § 1292(b) appeal, which "w[as] intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *Id.*

*Second*, assuming for the sake argument that the Petitioners identified one or more "controlling questions of pure law," the District Court correctly applied this Court's formulation of the two prong test for the crime-fraud exception as set forth in *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223 (11th Cir. 1987), and its progeny. Accordingly, there is no "substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed." *McFarlin*, 381 F.3d at 1259.

*Third*, accepting Petitioners' appeal will not "substantially reduce the amount of litigation necessary on remand," *id.* at 1264, because the crime-fraud exception is only one of the reasons why the documents and information at issue are discoverable. The District Court held that this material is discoverable even in the absence of the crime-fraud exception because "[i]nformation 'that would otherwise be protected must be produced if the knowledge, mental impressions,

opinions, and advice of a lawyer or law firm are at issue in a litigation to which the lawyer or law firm is a party.'"  Doc. 417 at n.6 (quoting Wright & Miller, Fed. Prac. and Proc. § 2026 (Supp. 1994)).  Accordingly, resolution of Petitioners' purported questions of law will not substantially reduce the amount of litigation on remand, as Drummond will seek this discovery regardless of whether the crime-fraud exception applies.

## I.   PETITIONERS' FIRST PURPORTED "CONTROLLING QUESTION OF LAW" IS NOT THE PROPER SUBJECT OF A § 1292(b) INTERLOCUTORY APPEAL.

Interlocutory appeals pursuant to § 1292(b) are "a rare exception," and "[t]he burden of persuading [this Court] that a question of law meeting the requirements of § 1292(b) clearly is presented is on the petitioning party." *McFarlin*, 381 F.3d at 1264.[3]  In their attempt to meet this burden, Petitioners first argue that the District Court's Order "did not require Drummond to establish a *prima facie* case as to each specific element of a specific crime or fraud." Collingsworth Pet. at 6.  For the reasons that follow, this argument is unavailing.

### A.   Whether there was a *prima facie* case of fraud on the court, witness bribery and suborning perjury is not a "controlling question of pure law."

_____

[3] Contrary to the Petitioners' statement, Collingsworth Pet. at 7, the District Court did not specifically identify any "controlling question(s) of pure law."  Although not dispositive, that is a factor that weighs against permitting an appeal. *McFarlin*, 381 F.3d at 1264 (explaining this Court's reluctance to accept § 1292(b) petitions in the absence of a clear, controlling question of law identified by a district court).

Petitioners' claim that "[t]he District Court applied an incorrect standard," *id.* at 8, is substantively nothing more than a complaint regarding "whether the district court properly applied settled law to the facts or evidence of a particular case." *McFarlin*, 381 F.3d at 1259. A cursory review of the statements in their petition confirms this fact:

- "The Court treated bribery and subornation of perjury together in analyzing the evidence." Collingsworth Pet. at 9.

- "[T]he District Court, while citing to the statutory sources for these crimes . . . did not apply the evidence to them." *Id.* at 10.

- "Drummond . . . failed to establish the required elements, including the specific intent involved and that the testimony at issue must be false." *Id.*

- "The sole evidence of Mr. Collingsworth's intent was introduced by Defendants, . . . and this demonstrated he did not intend to make false statements or mislead the court." *Id.*

- "[T]here is simply no evidence that Mr. Collingsworth intended to defraud the Court." *Id.* at 14.

*See also id.* at 4-5 & 10-11 (arguing that "unrebutted" testimony from "three highly credible experts" precludes the application of the crime-fraud exception).[4]

---

[4] Many of the Petitioners' statements mischaracterize the record and the District Court's Order. For example, Petitioners tell this Court that "[t]he alleged wrongful conduct at issue . . . is Mr. Collingsworth's admitted delay in disclosing to Drummond and the District Court" hundreds of thousands of dollars in witness payments. Collingsworth Pet. at 3. But the conduct at issue is not a harmless "delay" in disclosing these payments. Rather, it involved over 50 affirmative misrepresentations in pleadings, sworn declarations, discovery responses and open court regarding those payments. *See* Doc. 417 at 8-17. Moreover, Petitioners' fraud on the court is only one of the District Court's stated reasons for invoking the

Whether there is sufficient evidence to establish a *prima facie* case of fraud on the court, witness bribery and suborning perjury is inherently fact specific. In performing that analysis, the District Court applied the settled framework of the crime-fraud exception to numerous briefs and exhibits, as well as more than seven hundred evidentiary exhibits and live testimony presented during a three day hearing. Petitioners' argument that the District Court erred in concluding that there was a *prima facie* showing of these crimes and fraud is therefore the "antithesis of a proper § 1292(b) appeal." *McFarlin*, 381 F.3d at 1259; *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110 (2009) (decisions regarding scope of privilege, waiver and whether "communications fell within the privilege's crime-fraud exception . . . involve the routine application of settled principles.").

Consistent with this principle, this Court accepts § 1292(b) appeals only where they truly involve a question of "pure law." *See McAbee v. City of Fort Payne*, 318 F.3d 1248, 1249 (11th Cir. 2003) ("The question presented is whether the Alabama Water Pollution Control Act (the 'AWPCA'), Ala.Code §§ 22–22–1

---

crime-fraud exception. *See id.* at 20-26 (setting forth evidence establishing a *prima facie* case of witness bribery and suborning perjury). Drummond does not herein address each of the Petitioners' incorrect statements, as the vast majority are not germane to the narrow issue before this Court: whether Petitioners have clearly identified a "controlling question of pure law, . . . about which there are substantial grounds for difference of opinion, . . . and whose resolution may well substantially reduce the amount of litigation necessary on remand." *McFarlin*, 381 F.3d at 1264. Drummond's silence, however, should not be construed as any type of tacit agreement with the statements in the Petitioners' filings with this Court.

to 22–22–14, and the Alabama Environmental Management Act (the 'AEMA'), Ala.Code §§ 22–22A–1 to 22–22A–16, constitute 'State law comparable' to subsection 309(g) of the federal Clean Water Act (the 'CWA'), 33 U.S.C. § 1319(g).")"; *Bryant v. United States*, 768 F.3d 1378, 1380 (11th Cir. 2014) *cert. denied,* 136 S. Ct. 71 (2015) ("The two questions presented are (I) whether CERCLA preempts the North Carolina statute of repose, and (II) whether the North Carolina statute of repose contains an exception for latent diseases."). *Cf. McFarlin*, 381 F.3d at 1262 ("There is only an issue of applying the law to this particular factual scenario. That is not enough to upset the usual course of proceedings and permit an interlocutory appeal."). [5]

---

[5] Notably, the Supreme Court has held that "post judgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege," and that such decisions "are unlikely to be reversed on appeal, particularly where they rest on factual determinations for which appellate deference is the norm." *Mohawk*, 558 U.S. at 109-10 (citations omitted). *See United States v. Cleckler*, 265 F. App'x 850, 853 n.3 (11th Cir. 2008) ("We review the district court's findings on the applicability of both prongs of the crime-fraud exception for an abuse of discretion.") (citing *In re Grand Jury (G.J. No. 87–03–A),* 845 F.2d 896, 898 (11th Cir. 1988) and *Schroeder,* 842 F.2d at 1226–27). Only where an interlocutory decision involving privilege is "particularly injurious" or involves a "novel privilege ruling" will a § 1292(b) appeal be appropriate. *Mohawk*, 558 U.S. at 109-10. Neither of those rarities is presented here.

Petitioners' statement that "this Court should grant [Collingsworth's] section 1292 (b) Petition to assure full and careful review of these issues ***before*** the privileges are breached" is unpersuasive. Collingsworth Pet. at 19. Again, post-judgment review, rather than interlocutory appeal, is an adequate remedy for erroneous privilege rulings, and this Court has specifically rejected any notion that "once the privileged material is turned over, the 'cat is out of the bag' and the

Here, Petitioners' first purported question of "pure law" is not a legal question at all, but rather an argument that there was insufficient evidence to establish a *prima facie* case of fraud on the court, witness bribery and suborning perjury. As such, it is not the proper subject of a § 1292(b) interlocutory appeal. *McFarlin*, 381 F.3d at 1259 ("The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case.").

### B.    There are no "substantial grounds for difference of opinion."

Assuming for the sake of argument that Petitioners clearly identified a question of pure law, they also bear the burden of demonstrating "substantial grounds for difference of opinion." *McFarlin*, 381 F.3d at 1264. They cannot carry this burden, because the District Court faithfully applied this Court's formulation of the crime-fraud exception. Specifically, the District Court found a *prima facie* case of fraud on the court, witness bribery and suborning perjury, just as the first prong of the crime-fraud exception requires.

The District Court properly began its analysis by identifying the crimes and fraud at issue. *See* Doc. 417 at 6-7 ("Under both Alabama and federal law, it is a

---

damage is done." *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1053 (11th Cir. 2008) *aff'd*, 558 U.S. 100 (2009). Indeed, if a district court's privilege ruling is "controlling" simply because it could result in the disclosure of allegedly privileged information, every recipient of an adverse privilege ruling would be entitled to immediate appeal under § 1292(b).

crime to offer, promise, or give anything of value to a person testifying in a legal proceeding with the intent of influencing the testimony of that person.") and at 7 ("Subornation of perjury is a separate crime which consists 'in [sic] procuring or instigating another to commit the crime of perjury'" and collecting cases which hold that a fraud on the court is sufficient to trigger the crime-fraud exception).

Then, the District Court meticulously set forth the evidence establishing a *prima facie* case with respect to each of these crimes and fraud.[6] With respect to the fraud on the court, the District Court cited more than 20 examples of the Petitioners' false representations in sworn declarations, pleadings and open court. Doc. 417 at 8-17. The District Court concluded that "[i]t is hard to imagine a set of facts that could more clearly establish the first prong of the *prima facie* case for piercing the privilege" and found that the Petitioners' misrepresentations were "knowingly false." *Id.* at 17.

Petitioners claim that the District Court erred by not applying the common law definition of fraud to its analysis of Petitioners' fraud on the court.

---

[6] Although this point seems lost on the Petitioners, the District Court need not conclusively find that a crime or fraud on the court has occurred for the crime-fraud exception to apply. Indeed, the District Court made this point clear in its Order: "It is important to note that application of the crime-fraud exception to certain categories of discovery sought in this case is not a sanction as to liability or wrongdoing. The court has made no finding that any crime or fraud actually occurred. Instead, the court finds that application of the exception is necessary to get to the truth – not to find evidence of a crime or fraud, but to further explore whether a crime or fraud in fact occurred." Doc. 417 at 46.

Collingsworth Pet. at 12 (citing *Knight v. E.F. Hutton & Co.*, 750 F. Supp. 1109, 1114 (M.D. Fla. 1990) (setting forth the "elements of common law fraud")).  But this is not so.  As an initial matter, Petitioners do not cite a single case which holds that a proponent of the crime-fraud exception must meet all of the elements of common law fraud in order to present a *prima facie* case of fraud on the court.  The lack of such authority is fatal to their argument.  *McFarlin*, 381 F.3d at 1263.

Indeed, common law fraud is an entirely distinct legal concept from a fraud on the court.  Fraud on the court for purposes of the crime-fraud exception is characterized by "a scheme to interfere with the judicial machinery performing the task of impartial adjudication . . . by preventing opposing counsel from fairly presenting . . . its case or defense", as well as "attempt(s) to emasculate the court's ability to ascertain the truth" and conduct which "strikes at the very foundations of the adversary system and the judicial process."  *In re Sealed Case*, 754 F.2d 395, 401 (D.C. Cir. 1985).  *See also In re Sealed Case*, 676 F.2d 793, 815-16 and n.92 (D.C. Cir. 1982) (holding that "[t]he possibility that Company's chairman lied to or attempted to mislead the IRS with his affidavit is enough" to create a *prima facie* showing and invoke the exception. Although it may "not be sufficient to convict Company's chairman or anyone else of any crimes, . . . [a]ll that is required is that the likelihood of a violation be sufficient as a prima facie matter to warrant abridging any work product privilege that would normally attach to documents

relating to the possible violation."); *Gutter v. E.I. DuPont De Nemours*, 124 F. Supp. 2d 1291 (S.D. Fla. 2000) (applying the crime-fraud exception to discovery fraud and misrepresentations committed in prior litigation); *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 241 (N.D. Ill. 2000) (collecting cases where the crime-fraud exception has been applied to conduct that is unprofessional or unethical, an intentional tort, or sanctionable).[7] The cases cited by the District Court nowhere hold that a proponent of the crime-fraud exception alleging fraud on the court must meet the elements of common law fraud. *See* Doc. 417 at 18 (citing *Gutter*, 124 F. Supp. 2d at 1226, 1304; *In re Sealed Case*, 754 F.2d at 401).

Even if intent and injury were elements of fraud on the court, these elements were met. With respect to "intent," the District Court specifically found that Collingsworth and Conrad & Scherer made "knowingly false" statements in declarations, pleadings, discovery responses, and open court, as well as altered and

---

[7] *See also Moody v. I.R.S.*, 654 F.2d 795, 800 (D.C. Cir. 1981) ("a lawyer's unprofessional behavior may vitiate the work product privilege . . . [a]n attorney should not be able to exploit the privilege for ends outside of and antithetical to the adversary system any more than a client who attempts to use the privilege to advance criminal or fraudulent ends"); *1100 West, LLC v. Red Spot Paint and Varnish Co., Inc.*, No. 1:05-cv-1670-LJM-JMS, 2009 WL 232060 (S.D. Ind. Jan. 30, 2009) (crime-fraud exception applied where defendants perpetrated a fraud on the court by misrepresenting the existence of responsive documents); *Wachtel v. Guardian Life Ins.*, CIV 01-4183 FSH, 2007 WL 1752036, at *2 (D.N.J. June 18, 2007) ("[t]he crime-fraud exception is not limited to evidence that supports a finding of common-law fraud. Rather, under federal law, the exception can encompass communications and attorney work product 'in furtherance of an intentional tort that undermines the adversary system itself.'") (citations omitted).

withheld documents to hide evidence of their witness payments.  Doc. 417 at 17.[8]

That is unquestionably sufficient to establish a *prima facie* case of "intent" for

purposes of a fraud on the court.

As explained above, Petitioners do not cite a single case that supports the

proposition that fraud on the court requires proof of injury, and thus there was no

error by the District Court in not analyzing it specifically.  However, the evidence

is clear that there was such an injury.  Petitioners' fraud severely undermined the

integrity of the judicial process in the Northern District of Alabama because it

prevented Drummond "from fairly presenting . . . its case or defense,"

"emasculate[d] the court's ability to ascertain the truth" and "strikes at the very

foundations of the adversary system and the judicial process."  *In re Sealed Case*,

754 F.2d at 401.  Drummond defended itself against more than a hundred claims of

murder based solely on the testimony of six witnesses, and traveled to Colombia to

take the trial testimony of those witnesses, all without knowing every single one of

them had been paid.  *See Doe, et al. v. Drummond Co., Inc., et al.*, 782 F.3d 576

(11th Cir. 2015) (on petition for certiorari to the Supreme Court).  In fact,

Petitioners are *still* pursuing a monetary judgment against Drummond in a case

---

[8] Petitioners did not dispute that these representations were made, nor did they
dispute that the vast majority were false.  *See* Doc. 417 at 8.  Rather, they merely
disputed *why* those representations were made – i.e., "I forgot" we paid hundreds
of thousands of dollars to witnesses.  *Id.* at 1-2, 38-43 (describing this rebuttal as
"uncreditable and insufficient").

tainted by the crimes and fraud at issue. *Id.*[9]

Drummond and the District Court have also expended a tremendous amount of resources to unearth the Petitioners' fraud and crimes. In fact, were it not for Drummond's continued pursuit of discovery in the face of Petitioners' lies that there was nothing left to be disclosed, *see* Doc. 417 at 8-18, Petitioners' witness payments, and their lies to Drummond and this Court about them, would have *never* been uncovered. To the extent that a *prima facie* showing of "injury" is even required with respect to a fraud on the court, it is unquestionably present here.

Petitioners next contend that "inaccurate or false assertions in the discovery process typically do not give rise to the crime-fraud exception under any guise of alleging 'fraud.'" Collingsworth Pet. at 13. Once again, this is an argument that the evidence was insufficient, not that the District Court made a clear legal error.

Moreover, the District Court did not simply conclude that "inaccurate or false assertions in the discovery process" constitute fraud on the court, but rather correctly adopted a high standard, holding that Petitioners' acts "rise[] far above the level of mere discovery violations to evidence that, if believed by a trier of fact,

---

[9] This Court was similarly and fraudulently denied the opportunity to adjudicate appeals with the benefit of a full record, as it decided *Baloco, et al. v. Drummond Co., Inc., et al.*, 767 F.3d 1229 (11th Cir. 2014), *cert. denied* 136 S.Ct. 410 (2015), and *Doe, et al. v. Drummond Co., Inc., et al.*, 782 F.3d 576 (11th Cir. 2015), without any disclosure by Mr. Collingsworth and Conrad & Scherer that they had paid their "fact" witnesses in those cases.

would establish some ongoing fraudulent violation."  Doc. 417 at 17-18.  This is not a case involving the inadvertent nonproduction of a few documents, or a single, incomplete interrogatory response.  The District Court found a *prima facie* case that Petitioners submitted numerous false declarations signed under oath, repeatedly served false interrogatory responses, made affirmative misrepresentations in pleadings in three different courts, withheld numerous documents, altered documents that were produced to hide evidence of their witness payments and, on multiple occasions, provided knowingly false responses to direct questions from a federal district court judge regarding their witness payments.  *See* Doc. 417 at 6-18, 47-48.  Such conduct is unquestionably sufficient to invoke the crime-fraud exception.  *See* pages 9-10, *supra*.

Nor was Petitioners' fraud on the court limited to a few weeks or months.  It spanned years, and it is ongoing. [10]  As the District Court observed, its rejection of

---

[10] Petitioners represent that their fraud has now been "corrected."  Collingsworth Pet. at 15.  Recent developments strongly suggest that this representation, too, is false.  Incredibly, just over a week after the District Court entered its order on the crime-fraud exception (Doc. 417), Drummond learned that Petitioners likely paid yet another imprisoned Colombian paramilitary witness – Oscar David Perez Bertel, alias "Yuca" – who has testified against Drummond.  *See* Ex. 1.  Significantly, during the September 1-3 crime-fraud hearing, Collingsworth and Conrad & Scherer affirmatively represented Yuca was not paid.  *Id.* at 2-3.  In their response to Drummond's filing detailing this newly discovered evidence relating to payments to Yuca, *see* Ex. 2, Collingsworth and Conrad & Scherer did not deny that Yuca was paid, nor did they deny that he demanded money before signing his declaration.  *See id. generally.*  Rather, they claimed that they "began investigating this information, and that investigation is ongoing."  *Id.* at 2.

the Petitioners' absurd "I forgot" excuse necessarily means that Collingsworth and Conrad & Scherer's fraud on the court continues to this very day, because they are still misrepresenting the reason for failing to disclose their witness payments.  Doc. 417 at 2 (finding that the Petitioners' "I forgot" excuse "is an uncreditable and insufficient rebuttal designed to prevent the application of the crime-fraud exception to certain categories of discovery sought in this case.  It fails.").  For all of these reasons, Petitioners' argument that there was no *prima facie* case of fraud on the court should be rejected.

With respect to witness bribery and suborning perjury, the District Court found, "Drummond has presented sufficient evidence that, if believed by the trier of fact, would cause a reasonable person to find that Defendants' witness payments were not for security, but rather were intended to operate (or, for that matter, actually operated) as bribes."  Doc. 417 at 44.  In reaching this conclusion, the District Court analyzed the undisputed evidence that the witnesses who were paid gave prior testimony to Colombian authorities and had not implicated Drummond, but changed their testimony dramatically after receiving thousands of dollars from the Petitioners.  Doc. 417 at 21-26.  Further, Petitioners ***repeatedly*** lied about these payments.  *Id.*; *see also id.* at 8-17.  When Mr. Collingsworth attempted to explain this conduct during the evidentiary hearing, the District Court found his excuse to be "as weak as it is incredible." *Id.* at 42.

Of course, intent almost always must be inferred from surrounding circumstances, as affirmative evidence of intent is rarely available. *Cramer v. United States*, 325 U.S. 1, 31 (1945) ("What is designed in the mind of an accused never is susceptible of proof by direct testimony. If we were to hold that the disloyal and treacherous intention must be proved by the direct testimony of two witnesses, it would be to hold that it is never provable. . . . Since intent must be inferred from conduct of some sort, we think it is permissible to draw usual reasonable inferences as to intent from the overt acts."). As this Court has held, "A jury could find it strange that those who insist that their conduct was proper and their intent pure went to such great lengths to hide it all from the light of day. From such secrecy much may be inferred." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1402 (11th Cir. 1994). The evidence considered by the District Court was more than sufficient to support an inference of intent to procure false testimony, especially in light of the fact that, for purposes of the crime-fraud exception, the District Court was only determining whether a *prima facie* case had been presented, not whether anyone was actually guilty of a crime.[11]

---

[11] Petitioners bizarrely argue that "[i]t is not practical to assess the truth of witness testimony not yet given at trial." Collingsworth Pet. at 11. Frankly, Drummond cannot discern what point the Petitioners are arguing. To the extent Petitioners are claiming that the District Court erred in discrediting their "I forgot" excuse, that is clearly not a question of pure law appropriate for a § 1292(b) interlocutory appeal. To the extent Petitioners are arguing that the District Court erred in finding a *prima facie* case of witness bribery and/or suborning perjury (and therefore a *prima facie*

In sum, the District Court's Order properly applied this Court's settled formulation of the crime-fraud exception to the facts. Petitioners therefore cannot demonstrate a "substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed." *McFarlin*, 381 F.3d at 1259. *See also Simpson v. Carolina Builders Corp.*, 222 F. App'x 924, 925 (11th Cir. 2007) (refusing to permit a § 1292(b) appeal and holding "[t]he law of Georgia regarding quantum meruit is clear—it is the application of this law to the facts that is disputed here").

## II. THE DISTRICT COURT CORRECTLY SET FORTH THIS COURT'S FORMULATION OF THE SECOND PRONG OF THE CRIME-FRAUD EXCEPTION.

Petitioners next argue that review pursuant to 28 U.S.C. § 1292(b) is necessary because "the District Court's analysis did not utilize the acknowledged 'in furtherance of' requirement and instead applied a much broader 'related to' standard." Collingsworth Pet. at 16. According to the Petitioners, "[t]he District

---

showing that these witnesses gave false testimony), their argument is unavailing. Again, that is not a question of "pure law" suited for § 1292(b) review. That argument also fails on its merits, as the District Court's Order described how – before they were paid by the Petitioners – witnesses gave sworn testimony to Colombian authorities under oath in which they did not implicate Drummond. *See* Doc. 417 at 21-26. After receiving payments, witnesses provided irreconcilable sworn testimony to Mr. Collingsworth and Conrad & Scherer that they then used in their cases against Drummond. *Id.* Further, the Petitioners fraudulently concealed those witness payments from Drummond and the District Court. *Id.* at 8-17. As noted by the District Court, *id.* at 26, it is difficult to imagine stronger evidence of a *prima facie* case of bribery and suborning perjury.

Court's much broader 'relates to' standard conflicts with the controlling law of this Circuit." *Id.* at 18. This argument is unavailing.

First and foremost, the District Court's decision does not "conflict[] with the controlling law of this Circuit." Collingsworth Pet. at 18. To the contrary, the District Court specifically held that "[t]he second prong of *Schroeder* is satisfied by 'showing that the communication is related to the criminal or fraudulent activity established under the first prong.'" Doc. 417 at 26 (quoting *In re Grand Jury (G.J. No. 87-03-A)*, 845 F.2d at 898). The District Court's formulation of the second prong of the crime-fraud exception is therefore exactly the same as this Court's formulation of the second prong of the crime-fraud exception in *In re Grand Jury (G.J. No. 87-03-A)*, which in turn quoted this Court's decision in *Schroeder*, 842 F.2d at 1227 ("The second prong is satisfied by a showing that the communication *is related to* the criminal or fraudulent activity established under the first prong.") (emphasis added). [12]

Simply put, the District Court should not be held in error for following nearly twenty years of consistent precedent. *McFarlin*, 381 F.3d at 1258 ("[A]

---

[12] This Court's subsequent decisions have reaffirmed this formulation of the second prong of the crime-fraud exception. *See Cleckler*, 265 F. App'x at 853 (quoting *Schroeder*, 842 F.2d at 1227). District courts in the Eleventh Circuit have also consistently applied *Schroeder*'*s* formulation of the crime-fraud exception. *See Gutter*, 124 F. Supp. 2d at 1299 (quoting *Schroeder*); *Jones v. Tauber & Balser, P.C.*, 503 B.R. 162, 181 (N.D. Ga. 2013) (same).

question of law as to which we are in 'complete and unequivocal' agreement with the district court is not a proper one for § 1292(b) review.").

Petitioners' "in furtherance of" argument is also a straw man. In *Schroeder*, this Court acknowledged that while the second prong of the crime-fraud exception has been described different ways by different courts, what it requires is clear:

> The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong. Courts have enunciated slightly different formulations for the degree of relatedness necessary to meet that standard. *See, e.g., In re International Systems,* 693 F.2d at 1243 ("reasonably relate"); *In re Murphy,* 560 F.2d at 338 ("close relationship"); *In re September 1975 Grand Jury Term,* 532 F.2d 734, 738 (10th Cir. 1976) ("potential relationship"). Nonetheless, the different formulations share a common purpose-identifying communications that should not be privileged because they were used to further a crime or a fraud.

842 F.2d at 1227. In fact, the District Court used *both* phrases – "related to" and "in furtherance of" – when describing the types of documents and communications subject to discovery pursuant to the crime-fraud exception: "Documents falling within the scope of this opinion -- *i.e.*, those documents which cannot be subject to a claim of privilege due to the application of the crime-fraud exception -- shall be carefully scrutinized *in camera* by the Special Master to determine whether they are due to be produced to Plaintiffs because they were in furtherance of, or are closely related to, the unrebutted first prong of the *Schroeder* test." Doc. 417 at 45.

Regardless of the terminology used to define the second prong of the crime-

fraud exception, what it requires is well settled.[13]   The District Court's Order

correctly applied this Court's precedent in formulating the second prong of the

crime-fraud exception.  Thus, there is no "substantial dispute about the correctness

of any of the pure law premises the district court actually applied in its reasoning

leading to the order sought to be appealed."  *McFarlin*, 381 F.3d at 1259.[14]

### III.   RESOLUTION OF THE PETITIONERS' PURPORTED "QUESTIONS OF LAW" WILL NOT SUBSTANTIALLY REDUCE THE AMOUNT OF LITIGATION NECESSARY ON REMAND.

Finally, even if Petitioners had presented "controlling questions of law" with

"substantial grounds for difference of opinion," the resolution of those questions

would not "substantially reduce the amount of litigation necessary on remand,"

---

[13]   The Fifth Circuit succinctly explained this point:   "[A]ttorney-client communications and work product materials falling within the scope of the crime-fraud exception are those shown to hold 'some valid relationship' to the *prima facie* violation such that they 'reasonably relate to the fraudulent activity.'  . . . '[T]he exact formulation of a test for relatedness is less important than an understanding of what the [scope] test must accomplish; easy differentiation between material for which the law should not furnish the protections of a privilege and material for which a privilege should be respected.'"  *In re Grand Jury Subpoena*, 419 F.3d 329, 346-47 (5th Cir. 2005) (citation omitted).

[14]   It bears noting that the District Court has not yet ordered the production of any specific document.  Accordingly, Petitioners' hypothetical arguments regarding what is or is not "in furtherance of an ongoing crime or fraud," as well as their demand that the District Court "*finely parse*" documents, are inapposite.  *See* Collingsworth Pet. at 17-18.  The District Court expressly stated its intention to perform an *in camera* review for this very purpose.  Doc. 417 at 45-46 (ordering *in camera* review to determine which documents "cannot be subject to a claim of privilege due to the application of the crime-fraud exception").

which is an independent requirement they must meet. *McFarlin*, 381 F.3d at 1264. This is because the crime-fraud exception is only one of several reasons why Drummond is entitled to discover the documents and information at issue. The District Court specifically acknowledged another such reason, holding that the Petitioners' privilege and work product arguments are without merit in light of the fact that their knowledge, mental impressions, opinions and subjective state of mind are all at issue in this defamation case. *See* Doc. 417 at n.6 (citing Wright & Miller, Fed. Prac. and Proc. § 2026 (Supp. 1994)). Petitioners have not sought permission to appeal this aspect of the District Court's Order, which is distinct from the District Court's crime-fraud holding and provides an independently sufficient ground for seeking the documents and information at issue. Accordingly, Drummond will seek this information and these documents regardless of whether the crime-fraud exception applies.

## CONCLUSION

The District Court's Order properly applied the settled framework of the crime-fraud exception to facts. Petitioners have not met their burden of clearly identifying any "pure, controlling question of law" for which there is substantial grounds for difference of opinion. Nor will accepting their appeal substantially decrease the amount of litigation on remand. As such, the District Court's Order is not the proper subject of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted,

*s/ H. Thomas Wells, III*
William A. Davis, III
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL 35259
(205) 868-6000
Fax:  (205) 868-6099

*Counsel for the Respondent*
*Drummond Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **January 4, 2016**, Respondent's Opposition to Petitioner Terrence P. Collingsworth's Petition for Permission for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) was served on the following counsel of record utilizing the Court's ECF system pursuant to 11th Cir. R. 25-3:

Robert K. Spotswood
William T. Paulk
Spotswood Sansom & Sansbury LLC
1819 5th Ave. North, Suite 1050
Birmingham, AL 35203
Phone:  (205) 986-3620
Fax:  (205) 986-3639

W. Percy Badham, III
Brett Ialacci
Badham & Buck, LLC
2001 Park Place North, Suite 500
Birmingham, AL 35203

Phone:  (205) 521-0036
Fax:  (205) 521-0037

*s/ H. Thomas Wells, III*

H. Thomas Wells, III
Starnes Davis Florie, LLP
100 Brookwood Place, Seventh Floor
Birmingham, AL 35209
(205) 868-6000

*Counsel for the Respondent
Drummond Company, Inc.*

# Exhibit 1

FILED

2015 Dec-17  PM 08:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC., | ) | |
| | ) | |
| Plaintiff , | ) | |
| | ) | |
| vs. | ) | Case No. 2:11-cv-3695-RDP-TMP |
| | ) | |
| TERRENCE P. COLLINGSWORTH, | ) | **Contains information designated** |
| individually and as agent of Conrad & Scherer, | ) | **"Confidential" pursuant to the** |
| LLP; and CONRAD & SCHERER, LLP, | ) | **Stipulated Protective Order.** |
| | ) | |
| Defendants . | ) | **OPPOSED** |
| | ) | |

**DRUMMOND'S SUPPLEMENTAL OPPOSITION TO
DEFENDANTS' MOTION TO STAY**

<div style="display:flex;">

William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Benjamin T. Presley (ASB-0136-I71P)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099

Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G St. NW, Suite 800
Washington, DC 20001
(202) 627-6900

</div>

*Attorneys for Drummond Company, Inc.*

{B2114217}

It has just come to light that another paramilitary witness against Drummond in *Balcero* was likely paid by Defendants.  According to a filing within the last 24 hours in the *Dole* proceeding, paramilitary Yuca demanded to be paid $2,200 before signing his declaration, and it appears monthly payments of $2,200 have been sent to him through Ivan Otero which may be ongoing as of this very day.  This newly discovered information strongly counsels against staying this matter for any purpose.

Oscar David Perez Bertel, alias "Yuca" is an imprisoned Colombian paramilitary and a witness in *Balcero*.  Mr. Collingsworth and Conrad & Scherer submitted Yuca's sworn declaration in opposition to Drummond Ltd.'s motion for summary judgment.  *Balcero* Doc. 407-49.  Defendants are also relying on Yuca's declaration to support the truth of their defamatory letters in this case.  *See* Doc. 46 at 6-7; *see also* Doc. 43-10 (Defs' 2nd Am. Responses to Drummond's 1st Req. for Production) at Nos. 1, 3-16, 18-20, 22-27, 28-33 (either citing Yuca's declaration specifically or incorporating it by reference as support for nearly all of the defamatory statements).[1]

Defendants have repeatedly represented to this Court that Yuca was not paid.  There is no disclosure of any payments to him in any of the dozens of representations regarding witness payments preceding the September 1-3 crime-fraud hearing.  *See* Doc. 280 *generally*.  Nor is there any mention of Yuca receiving payments in Defendants' letter to the Court dated June 4, 2015, in which they purported to respond to this Court's direct request that they provide a comprehensive list of paid witnesses.  Ex. 1 (June 4, 2015 C. Niewoehner Ltr.).  During Mr.

---

[1] Defendants have also cited Yuca's declaration in support of their false allegation that "Drummond's local lawyers, Jaime Bernal Cuellar and Camilo Gomez, have attempted to bribe or threaten witnesses to keep quiet about Drummond.  *See, e.g.*, Ex. AA (Decl. of Oscar David Perez Bertel) ¶ 19."  Doc. 114 at 2.

Collingsworth's deposition in advance of the September 1-3 evidentiary hearing, he was directly

asked whether Yuca requested or received any payments and testified he did not:

> Q Do you recall a man named Yuca, alias "Yuca"?
>
> A I do.
>
> Q Has he received payments?
>
> A Not that I'm aware of.
>
> Q Has he requested any form of assistance from you or your legal team, to your knowledge?
>
> A Not that I'm aware of.

Doc. 311-2 (Collingsworth Dep.) at 16:7-15.

At the September 1-3 evidentiary hearing, Defendants' counsel represented to this Court

in his opening statement that Defendants' fraud on the court was "fixed" because everything had

been disclosed:  "[T]his misrepresentation was fixed.  It was fixed after this order. It was fixed

after a new team of lawyers came in."  Doc. 389 (Sept. 1-3 Hrg. Tr.) at 29:3-6.  Throughout the

hearing, Defendants continued to tell this Court that they had fixed and disclosed everything:

> MR. McNEIL: It is relevant because in the discovery case, the fundamental point is that this problem was fixed.  It was fixed before the deadline, and there was enormous effort to do it. And that goes to the whole issue of once a problem occurs, we fixed it.  There are cases where people didn't fix it. It went all the way to trial.
>
> THE COURT: Let me ask you this: Who is "we"?
>
> MR. McNEIL: Well, I'm using the clients, as meaning Mr. Collingsworth and Conrad & Scherer . . .

Doc. 390 (Sept. 1-3 Hrg. Tr.) at 480:5-14; *see also* Doc. 391 (Sept. 1-3 Hrg. Tr.) at 762:6-10

("[MR. McNEIL]: . . . The first bucket is misrepresentation. Just the mere misrepresentation to

this Court and whether it was fixed and certainly it was fixed, is that enough to trigger an

incredibly high sacrosanct barrier. I would say I don't think so."); *id.* at 766:20-21 ("It was

{B2114217}

caught. And whether you want to -- it was caught in time; it was fixed."). *See also* Doc. 389
(Sept. 1-3 Hrg. Tr.) at 105:23-24 ("[MR. COLLINGSWORTH: . . . It was a horrible mistake that
was easily fixed."), and at 197:21 – 198:2 ("**Q** That is not the first time you have said in this case
that the record is complete, is it?  **A** I really don't know.  **Q** You don't?  You never said the
record is now complete; the record is now straight?  **A** I might have said that, yes.  It is this time.
We're confident of that.").

Also during the September 1-3 evidentiary hearing, Defendants presented a
demonstrative slide that they claimed identified which witnesses they paid, and which witnesses
they did not.  Ex. 2 (Defendants' Sept. 1-3 Hrg. Exhibit No. 442).  That Exhibit represented that
"No Witness Protection Assistance [was] Paid" to "Oscar David Perez Bertel, AKA 'Yuca.'"  *Id.*
Defendants' counsel questioned Mr. Collingsworth regarding this demonstrative on direct
examination, and Mr. Collingsworth was unequivocal in his response:

> **Q** This reflects -- the bottom quadrant of this pyramid reflects a number of names.
> What does that represent?
>
> **A** Those are other individuals who either gave us statements or testified in the
> first Drummond trial who we did not have to give assistance to because there
> weren't significant threats made.

Doc. 389 (Sept. 1-3 Hrg. Tr.) at 57:4-9.

Dole Food Company, Inc. ("Dole") recently filed a motion to compel in the California
state court proceedings styled *Perez, et al. v. Dole Food Company, Inc., et al.*, Case No.
BC412620.  Ex. 3 (Dec. 16, 2015 *Dole* filing).  Among other things, that filing described a
number of documents the *Dole* court ordered to be produced over Mr. Collingsworth and Conrad
& Scherer's objections which appear to bear directly on the issue of witness payments.  One of
the documents is a June 15, 2012 memo from Lorraine Leete to Terry Collingsworth which

{B2114217}

apparently reflects "'Yuca' or 'Y' refusing to sign a declaration until he receives payments, [REDACTED] of $2,200 monthly." *Id.* at 5.  In pertinent part, Dole's motion states as follows:

> Throughout these proceedings, Plaintiffs' counsel has consistently asserted that witness payments were made and/or discussed for some purpose other than for testimony. (Ex. 5 at 57:27-58:1 ["payments were being made for security for the families of these witnesses, not to pay the witnesses directly for their testimony"]; Ex. 10 at 2-4 [arguing that security payments were "necessary and proper" to five *Drummond* witnesses, a fact that was later discredited in Judge Proctor's Order]; *see also* Ex. 11 at 36:20-25.) The recently produced documents, however, expressly reference Hasbún making demands [REDACTED] (Ex. 12), and other witnesses, including one referred to as "Yuca" or "Y," refusing to sign a declaration until he receives payments, [REDACTED] of $2,200 monthly. (Ex. 7).

> Equally shocking, it appears that Plaintiffs' counsel may still be lying to this Court regarding the number of AUC witnesses who Conrad & Scherer paid.

> [. . .]

> One of the witnesses against Drummond that Conrad & Scherer and Mr. Collingsworth claimed has not received any "witness protective assistance" on a slide presented during the crime-fraud hearing held by the *Drummond* court on September 1-3, 2015, was "Oscar David Perez Bertel AKA 'Yuca.'" (Ex. 14.) Contrary to this representation, Document 1585, which this Court ordered produced from Plaintiffs' privilege log, a June 15, 2012 memo from Lorraine Leete to Terry Collingsworth, with the subject line, "6/15/2012 Meeting with Ivan Notes," conveys that "Y" or "Yuca" would not sign a declaration [REDACTED] (Ex. 7.) Within weeks of Leete sending Collingsworth this memo, Conrad & Scherer increased its monthly payments to Ivan Otero *by exactly* $2,200, from $2,700 to $4,900. (Exs. 18, 19, 20.)  Based on information available to Dole Food, this $4,900 monthly payment to Otero appears to have continued through at least May of 2014. (*See* Ex. 19.)  Plaintiffs' counsel lying to the *Drummond* court about witness payments made through intermediaries is consistent with the original lies told about the other witnesses they were paying through Otero.

*Id.* at 5-6.

Drummond has reviewed the Defendants' document production and the privilege logs they have produced in this case, and cannot find a document or privilege log entry matching the description of this June 15, 2012 memo.  Including this newly discovered information, the timeline of Defendants' interactions with Yuca is troubling, to say the least.  It is also familiar.

4

Before meeting Mr. Collingsworth, Yuca testified several times before the Colombian Fiscalia between 2009 and 2011 and did not implicate Drummond.  *See* Doc. 355-1 at 38-39. But on June 27, 2012, Defendants obtained a declaration from Yuca claiming, for the first time, that Drummond was responsible for the Drummond union leader killings.  *Balcero* Doc. 407-49.

According to the *Dole* filing, less than two weeks before Yuca signed this declaration, Lorraine Leete[2] met with Ivan Otero, and then sent a memo to Collingsworth regarding that meeting which stated that Yuca would not sign his declaration unless he was paid $2,200 per month.  Four days later, Mr. Collingsworth sent an email to Conrad & Scherer's accounting personnel directing them to '███████████████████████'  Ex. 4 (CS 10169). Thereafter, the monthly payments to Ivan Otero increased by *exactly* $2,200, from $2,700 to $4,900.  These payments may be ongoing as of this very day.  A full timeline of these events is below:

| Date(s) | Event |
|---|---|
| December 29, 2009<br>January 19, 2010<br>August 26, 2010<br>February 9, 2011 | Yuca testifies before the Colombian Fiscalia.  He denies any knowledge of Drummond Ltd. executive Alfredo Araujo's complicity in the union leader murders, denies knowing who planned the murders, and denies any knowledge of any agreements between Drummond and the AUC.  Doc. 355-1 at 38-39. |
| June 15, 2012 | Lorraine Leete sends Collingsworth a memo regarding her "6/15/2012 Meeting with Ivan Notes." In that memo, Leete apparently states that Yuca will not sign his declaration unless he receives $2,200 a month. Ex. 3 (Dec. 16, 2015 *Dole* filing) at 6.<br><br>Leete's billing records for this date reflect ███████████████ ██████████████████████. Ex. 6 (CS 10465-67). |

---

[2] Lorraine Leete is a critical player in this case, as the evidence shows that she communicated regularly with Ivan Otero, drafted witness declarations and delivered payments to witnesses.  *See* Doc. 283 at n.7.  It now appears that she was also involved in negotiations regarding payments to Yuca and the drafting of his declaration. In September 2014, Leete abruptly left Collingsworth's team, taking her laptop with her in direct violation of this Court's preservation orders.  *See* Docs. 105 & 119.  *See also* Doc. 283 at Section II-B.  Defendants have since claimed that '████████████████████████████████████' Ex. 5 (Oct. 22, 2015 Hrg. Tr. Excerpt) at 98:18-20.  The recent revelations involving Yuca make the loss of this evidence all the more prejudicial to Drummond.

{B2114217}

| Date(s) | Event |
|---|---|
| June 19, 2012 | Collingsworth replies "OK TO PAY" to an email including multiple wire requests.  He also states " ███████████████████████████ ███ " Ex. 4 (CS 10169). |
| June 26, 2012 | Lorraine Leete emails Ivan Otero a copy of Yuca's unsigned declaration. Ex. 7 (CS 3882). |
| June 27, 2012 | Yuca signs his declaration against Drummond. *Balcero* Doc. 409-47. |
| June 28, 2012 | Ivan Otero emails Lorraine Leete a signed copy of Yuca's declaration. Ex. 8 (CS 3883-94). |
| July 9, 2012 | Maggie Crosby forwards Lorraine Leete confirmation of a July 9, 2012 wire transfer from C&S to Ivan Otero in the amount of $4,900.  In that chain, Crosby states "[h]ere is monthly wire for Ivan Otero:  $2,700 monthly wire $2,200 add'l request". Ex. 9 (CS_TC 14344-45). |
| September 28, 2012 | Maggie Crosby forwards Tellez and Leete a copy of a $4,400 wire to Ivan Otero from C&S stating "Here is confirmation of wire sent to Ivan." Ex. 10 (CS_TC 14349-50 & 857). \n\n When Defendants first produced this email in December 2014, they redacted the wire amount as "privileged." *Id.* |
| October 12, 2012 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The amount of the transfer is redacted as "privileged." Ex. 11 (CS_TC 855).[3] |
| November 1, 2012 | Collingsworth and Conrad & Scherer file Yuca's June 27, 2012 declaration with this Court in opposition to Drummond Ltd.'s motion for summary judgment in *Balcero*. *See Balcero* Doc. 407-49. |
| November 2, 2012 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 13 (CS_TC 132-33). |

---

[3] Notably, prior to July 2012, the amounts of the monthly wires to Otero were not redacted, and reflected they were for $2,700.  *See, e.g.,* Ex. 12 (CS_TC 101, 102, 104 & 107).  Once the wire amounts increased, Defendants started redacting the total amount, but producing other documents which reflected that part of the wire was the $2,700 payments for Samario and El Tigre.  Drummond suspects that once these redactions are removed, it will reveal monthly wires to Otero in the amount of $4,900.

6

| Date(s) | Event |
|---|---|
| November 16, 2012 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario.  In the email to Collingsworth asking for his authorization, Maggie Crosby states that this wire is "to make up for September's missing wire." Ex. 14 (CS_TC 134-36). |
| December 7, 2012 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 15 (CS_TC 137-39).<br><br>When Defendants later produced documents reflecting this same transfer, they redacted the total amount as "privileged."  Ex. 16 (CS_TC 860). |
| January 4, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 17 (CS_TC 140-41). |
| February 1, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 18 (CS_TC 142-43). |
| March 1, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 19 (CS_TC 144-46 & 14819-20).<br><br>On a later produced document, the total amount is revealed to be $4,900. *Id.* |
| April 5, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 20 (CS_TC 147-49 & 14329-30).<br><br>On a later produced document, the total amount is revealed to be $4,900. *Id.* |
| April 23, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 21 (CS_TC 150). |

7

{B2114217}

| Date(s) | Event |
|---------|-------|
| May 1, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 22 (CS_TC 152-53 & 14828-29).<br><br>On a later produced document, the total amount is revealed to be $4,900. *Id.* |
| May 31, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 23 (CS_TC 154-56). |
| June 28, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 24 (CS_TC 157-59). |
| August 28, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 25 (CS_TC 162-64 & 14834-35).<br><br>On a later produced document, the total amount is revealed to be $4,900. *Id.* |
| September 27, 2013 | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 26 (CS_TC 166-67 & 14351-52).<br><br>On a later produced document, the total amount is revealed to be $4,900. *Id.* |
| November 1, 2013[4] | Conrad & Scherer sends a wire transfer to Ivan Otero.  The total amount of the wire is redacted as "non-responsive", but expense records show that it includes the $2,700 payment to El Tigre and Samario. Ex. 27 (CS_TC 175-77). |

---

[4] Defendants have not produced any documents reflecting these monthly payments to Ivan Otero that postdate November 1, 2013, but these $4,900 monthly payments may continue to present day.  Notably, it appears that Mr. Collingsworth and Conrad & Scherer have produced documents to Dole reflecting these monthly payments that have not been produced to Drummond.  *See* Ex. 3 (Dec. 16, 2015 *Dole* filing) at 6 ("this $4,900 monthly payment to Otero appears to have continued through at least May of 2014").

8

As the above timeline reflects, if Dole's description of the June 15, 2012 memorandum is accurate, there is overwhelming evidence that Yuca was paid for his testimony by the Defendants.  Worse still, the June 15, 2012 memo appears to have been neither produced nor logged by the Defendants (much like the "deps in the can" email that revealed El Tigre and Samario were being paid), and they largely redacted the emails and wire transfer confirmations reflecting these $2,200 monthly payments as "non-responsive" or "privileged" (similar to how they redacted documents to attempt to hide their payments to El Tigre and Samario).  Like the payments to El Tigre and Samario, it appears that Ivan Otero served as the intermediary for $2,200 payments to Yuca, delivering them on a monthly basis.

Simply put, if Yuca was paid, then it unequivocally proves that the Defendants lied to this Court during the September 1-3 crime-fraud hearing.  It would also be arguably the strongest piece of evidence discovered to date supporting this Court's ruling on the crime-fraud exception. *See* Doc. 417 *generally*.

**ADDENDUM:**  Shortly before Drummond was about to finalize this brief for filing, the Southern District of Florida entered the attached order ruling on the pending motions for summary judgment in the insurance coverage action, which therefore moots Defendants' motions to stay in this and the RICO action.  Ex. 28 (Dec. 17, 2015 Order).  Nevertheless, given that Defendants have now filed an interlocutory appeal of this Court's crime-fraud ruling, the above newly discovered information should be considered by the Court in deciding whether any stay should be entered during the pendency of such appeal.  If Defendants continued to make knowingly false representations during the September 1-3 crime-fraud hearing, then this Court and the Eleventh Circuit need to know, and the record on appeal should reflect that fact. Drummond respectfully requests that no stay be entered for any purpose in this matter.

{B2114217}

Respectfully submitted,

| | |
|---|---|
| */s/ H. Thomas Wells, III* | */s/ Sara E. Kropf* |
| William Anthony Davis, III (ASB-5657-D65W) | Sara E. Kropf |
| H. Thomas Wells, III (ASB-4318-H62W) | LAW OFFICE OF SARA KROPF PLLC |
| Benjamin T. Presley (ASB-0136-I71P) | 1001 G St. NW, Suite 800 |
| STARNES DAVIS FLORIE LLP | Washington, DC 20001 |
| P.O. Box 59812 | (202) 627-6900 |
| Birmingham, AL  35259 | |
| (205) 868-6000 | |
| fax: (205) 868-6099 | |

*Attorneys for Drummond Company, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on **December 17, 2015**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Special Master T. Michael Brown, Esq.
Ms. Carly Miller, Esq.
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
mbrown@babc.com
camiller@babc.com

Robert Spotswood
William K. Paulk
SPOTSWOOD SANSOM & SANSBURY, LLC
One Federal Place
1819 Fifth Avenue North, Suite 1050
Birmingham, Alabama 35203
rks@spotswoodllc.com
wpaulk@spotswoodllc.com

Walker Percy Badham, III
Badham & Buck, LLC
2001 Park Place, Suite 500
Birmingham, AL 35203
pbadham@badhambuck.com

*s/ H. Thomas Wells, III*
H. Thomas Wells, III (ASB-4318-H62W)

10

{B2114217}

# Exhibit 2

Case 2:11-cv-03695-RDP-TMP   Document 430   Filed 12/22/15   Page 1 of 4

Case: 15-90032    Date Filed: 01/04/2016    Page: 43 of 46

FILED
2015 Dec-22  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| DRUMMOND COMPANY, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No 2:11-cv-3695-RDP |
| | ) | |
| TERRENCE P. COLLINGSWORTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY TO DRUMMOND'S SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO STAY

Defendants respond briefly to Drummond's "supplemental opposition," Doc. 429, to Defendants' motion to stay, Doc. 412 and *RICO* Doc. 36.

In its "supplemental opposition," Drummond argues that a recent filing by Dole in the California litigation regarding a witness named "Yuca" "should be considered by the Court in deciding whether any stay should be entered during the pendency" of the Defendants' appeal of the crime-fraud order. Doc. 429, at 9. But, it does not explain why.

First, Drummond is wrong that the June 15, 2012 memorandum referenced in Dole's filing was "neither produced nor logged by the Defendants." Doc. 429, at 9. The memorandum cited by Dole was logged by Defendants on their Saturday, August 29, 2015 supplemental privilege log at entry No. 16261 and Bates-labeled "CSPRIV521231." *See* Exhibit A (Aug. 29, 2015 email and letter transmitting privilege log to Drummond and the Special Master). The memorandum was also produced to the Special Master on August 29, 2015. *See* Exhibit B (Aug. 29, 2015 email transmitting privileged documents to the Special Master).

The date of this privilege production is important because, as the Court and Drummond are aware, the parties were feverishly preparing for the upcoming evidentiary hearing on Drummond's sanctions and spoliation motions, which began a mere three days after Defendants produced their privilege log to Drummond and the Special Master. The information contained in the June 15, 2012 memorandum, which was one of nearly 4,000 individual entries on the privilege log, was not intentionally withheld when the memorandum was produced to the Special Master. After discovering the relevancy of the memorandum in the Dole case, Defendants began investigating this information, and that investigation is ongoing.

Second, Defendants acknowledge an obligation to supplement their discovery responses with this information, and Defendants have demonstrated a commitment to supplementing their discovery responses, as evidenced by the nine supplemental responses they have served since January 2015 regarding witness security and other assistance payments. Instead of prematurely, and perhaps erroneously, supplementing their discovery responses, however, Defendants elected to complete their investigation to ensure a supplemental response is accurate. A supplemental response will be forthcoming once Defendants complete their investigation, and Defendants offer to do so even if this matter is otherwise stayed.

Finally, Defendants reiterate their request, as set forth in their reply brief, Doc. 418 and *RICO* Doc. 38, that the RICO case be stayed pending the appeal of the crime-fraud order, notwithstanding resolution of the summary judgment motions in the insurance coverage proceedings. A copy of the order resolving the summary judgment motions is attached. *See* Exhibit C. To the extent there is anything relevant about this "Yuca" issue, this additional information related to one other witness can be considered in the *in-camera* review process undertaken by the Special Master, should that process move forward following an appeal.

2

Drummond offers no substantive reason for why this case should not be stayed based on this "new" information during an appeal of *legal* issues in the crime-fraud order.

DATE: December 22, 2015                Respectfully submitted,

                                       /s/ William T. Paulk
                                       Robert K. Spotswood
                                       Michael T. Sansbury
                                       William T. Paulk
                                       SPOTSWOOD SANSOM & SANSBURY LLC
                                       1819 5th Ave. N.
                                       Suite 1050
                                       Birmingham, AL 35203
                                       Phone (205) 986-3620
                                       Fax (205) 986-3639
                                       rks@spotswoodllc.com
                                       msansbury@spotswoodllc.com
                                       wpaulk@spotswoodllc.com

                                       *Attorneys for Conrad & Scherer, LLP*

                                       /s/ W. Percy Badham
                                       W. Percy Badham
                                       Brett A. Ialacci
                                       BADHAM & BUCK, LLC
                                       2001 Park Place North, Suite 500
                                       Birmingham, Alabama 35203
                                       Phone: (205) 521-0036
                                       Fax: (205) 521-0037
                                       pbadham@badhambuck.com
                                       bialacci@badhambuck.com

                                       *Attorneys for Terrence Collingsworth*

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 22, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

T. Michael Brown
Carly Miller
BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
mbrown@babc.com
camiller@babc.com

William Anthony Davis, III
H. Thomas Wells, III
Benjamin T. Presley
STARNES DAVIS FLORIE, LLP
P.O. Box 59812
Birmingham, AL 35259
tdavis@starneslaw.com
twells@starneslaw.com
bpresley@starneslaw.com

Sara E. Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G Street NW, Suite 800
Washington, D.C. 20001
Sara@kropf-law.com

/s/ William T. Paulk
William T. Paulk

4